UNITED STATES, Appellee

v

THOMAS R. DANIELS, Specialist Six, U. S. Army, Appellant

No. 27,428

May 31, 1974

*Captain John T. Willis* argued the cause for Appellant, Accused. With him on the brief were *Colonel Arnold I. Melnick* and *Captain William X. Parsons.*

*Captain David A. Schleuter* argued the cause for Appellee, United States. With him on the brief were *Lieutenant Colonel Ronald M. Holdaway, Lieutenant Colonel Donald W. Hansen, Captain Richard A. Karre,* and *Captain M. Douglas Deitchler.*

### OPINION OF THE COURT

FERGUSON, Senior Judge:

This case involves the question of the power of a court-martial to secure the testimony of a witness requested by the defense.

The accused was tried before an Army special court-martial on April 12, 1972 at SHAPE, Belgium. He was convicted of one specification of attempted carnal knowledge with a female under the age of 16 years, in violation of Article 80, Uniform Code of Military Justice, 10 USC § 880. The sentence as adjudged by

the court members and approved by the U.S. Army Court of Military Review extends to a bad-conduct discharge.

The case for the prosecution was established by the testimony of two policemen, MDL Serge Gillet, a Belgian gendarme who was a member of the SHAPE International Police, and his patrol partner, Sergeant Harold R. Varner. While on routine patrol on the SHAPE installation in Belgium, on February 26, 1972 at 2000 hours in the evening, Gillet and Varner noticed a car parked outside a locked gate on an access road to Caravan Park. After they checked Caravan Park, Gillet and Varner decided to check the car and drove off the installation to do so. When they pulled onto the access road, Varner turned on his bright lights. They saw a blue Volkswagen and stopped about 10 meters from it. They saw the accused lying on a blanket on the ground beside the parked car, on top of a girl, later identified as a female child under the age of consent. The accused jumped up and ran behind the parked automobile. Varner observed that the accused was undressed from the waist down and that his penis was erect. The girl wrapped herself in the blanket after the accused jumped up and ran. The accused testified to a lack of memory about the events that transpired while he was on the blanket with the alleged victim before Gillet and Varner arrived at the scene, and defended on the basis that his voluntary drunkenness negated any intent to commit unlawful carnal knowledge with the girl in question. The alleged victim did not testify at the trial, or appear by deposition, and the absence of her testimony is the subject of our grant of review in this case.

It is clear that the prosecution did not consider the girl to be an essential prosecution witness on the merits. Although there is evidence in the record that at some time prior to trial the Government was ready to take steps to insure the girl's testimony as a material witness, by the time of trial only the accused was demanding her presence or her deposition. Nevertheless, the military judge found that she was "an important witness to the defense."

On March 21, 1972, some 3 weeks after the events in question and some 20 days prior to trial, the trial defense counsel requested in writing that the trial counsel secure the girl's appearance at trial. The defense request, alluding to a pretrial statement which had been made by the girl, characterized her testimony as "essential to the defense on the merits of the case, during the 39A Session, and, during the sentencing portion." At trial, the trial counsel declared that the victim would not be called as a witness for the prosecution. As far as her presence as a defense witness was concerned, he stated, "[T]he Government has endeavored to obtain the presence of Miss H., but the Government is unable to produce her appearance." The trial counsel related that "[t]he Government has no power to subpoena Miss H. here in Europe, because Miss H. is a civilian, a dependent of a US military family." The trial counsel also related that after a pretrial request was made both Sergeant First Class H., the girl's father, and Miss H., jointly decided that the girl would not appear at trial voluntarily. At the initial Article 39(a) session, SFC H. again refused to allow his daughter to appear and testify.

An attempt to secure the girl's testimony through the process of the Belgian courts advanced no further than the Belgian legal adviser to the command who contacted the Kings Prosecutor and was told it would be impossible to subpoena the girl under the circumstances.

In denying the defense motion for appropriate relief in the nature of granting the pretrial request for the appearance of Miss H. as a witness, the military judge ruled:

It also appears to this Court that United States military authorities acting on their own power, have no ability to summon this young woman and to compel her attendance. It is my understanding that the law—that domestic United States authorities have no powers to give us relief in this case to compel the attendance of this young lady; and it is my understanding that under Belgian law, on the basis of evidence produced by the prosecution that Belgian law does not possess the power to summon this young lady to appear before this military tribunal.

Thus, the young lady is out of reach of this court. I am satisfied, from what I heard, that the Government has taken reasonable efforts to summon this young lady by request; by request to Belgian authorities, and the defense motion for a continuance and the alternative to dismiss the charge by reason of the absence of this young lady is denied.

Other related motions for change of venue to locations where Miss H. would be subject to subpoena or compulsory deposition were denied by the military judge. All of these alternatives, of course, were dependent for their efficacy upon the voluntary movement of the witness into a jurisdiction where court-martial process operates. These rulings were assigned as error before the U.S. Army Court of Military Review, but the case was affirmed there without opinion. We hold that it was error for the military judge to have proceeded with the trial of this case knowing that an important defense witness would be unavailable to testify at trial or by deposition.

■ Although at one point the defense argued that the military judge had simply not received competent evidence that the Belgian authorities were powerless to deliver Miss H. to a court-martial convened in Belgium under the laws of the United States, the mere fact that hearsay evidence about Belgian law was received by the military judge at an Article 39(a) session is not determinative of the matter. The Manual for Courts-Martial, United States, 1969 (Rev.) permits a relaxation of the rules of evidence "as to interlocutory matters relating to an application for a continuance . . . or to the availability of witnesses." MCM, paragraph 137. The military judge in this case was acting within the allowable limits of his discretion in permitting the command's Belgian legal adviser to testify concerning the advice on Belgian law he had received from the Kings Prosecutor.

■ When the military judge allowed this trial to continue to conviction and sentence knowing that the court-martial was without power to compel the attendance of an important witness, the possibility that the accused would receive a fair trial was gravely impaired. Neither Article 46, UCMJ, 10 USC § 846, nor paragraph 115d, MCM, explicitly authorized the court-martial to compel the testimony of Miss H. under the circumstances. Consequently, the accused was deprived of the right "to have compulsory process for obtaining witnesses in his favor" as guaranteed in the Sixth Amendment. See United States v Sears, 20 USCMA 380, 43 CMR 220 (1971); United States v Sweeney, 14 USCMA 599, 34 CMR 379 (1964). In the absence of specific statutory or regulatory authority to compel Miss H.'s testimony as a defense witness, and so long as her voluntary presence could not be secured, we believe the military judge had no constitutional alternative except to abate the proceedings. Were the military authorities able to secure Miss H.'s testimony by removing the court-martial from Belgium, the military judge could certainly have granted a change of venue for that purpose. United States v Nivens, 20 USCMA 420, 45 CMR 194 (1972).

Appellate counsel have argued various aspects of the question whether the Belgian authorities really lacked the power to compel Miss H. to appear at the accused's court-martial by the military authorities of the United States. In view of our disposition of the case, those arguments will be best made in a trial forum. Under our constitutional analysis, the question is not whether another nation can or might deliver one of its residents to a court-martial of the United States and compel their testimony therein, but whether the foreign nation does so in fact.

The appellant would have this Court incorporate so much of the provisions of 28 USC § 1783(a) and Fed R Crim P 17(e)(2) into court-martial practice as would permit a court-martial abroad to compel American citizens abroad to testify before it. These authorities permit a court of the United States to issue a subpoena to a national or resident of the United States who is in a foreign country to appear for trial in the United States. Although this case demonstrates a gap in court-martial process so far as United States civilians residing abroad are concerned, we decline to rule in this

area because such a change requires legislative rather than judicial action.

The decision of the U.S. Army Court of Military Review is reversed. The findings of guilty and the sentence are set aside. A rehearing may be ordered.

Chief Judge DUNCAN concurs.

QUINN, Judge (concurring in the result):

Section 1783(a), Title 28 of the United States Code, empowers a "court of the United States" to issue a subpoena to a citizen of the United States resident in a foreign country requiring appearance as a witness before the court or "a person or body designated by it . . . [if] necessary in the interest of justice." The statutory definition of "court of the United States" excludes a court-martial, but it includes a United States District Court. See United States v Frischholz, 16 USCMA 150, 36 CMR 306 (1966). The grant of authority to compel testimony before any "person or body" is, in my opinion, sufficiently broad to include the power to require testimony before a court-martial. While the procedure is cumbersome, it is a means by which the requested witness in this case could have been required to appear before the court-martial trying the accused. Consequently, it was error for the trial judge to allow the case to proceed without requiring the Government to resort to § 1783(a) to compel attendance of the witness. Cf. United States v Lohr, 21 USCMA 448, 45 CMR 222 (1972). I, therefore, agree with the disposition of the case directed in the principal opinion.